UNITED STATES of America, Appellee,

v.

Carlos VASQUEZ, Defendant–Appellant.

No. 454, Docket 95–1144.

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1996.

Decided May 6, 1996.

James V. Somers, Lynch, Traub, Keefe & Errante, New Haven, Connecticut (Charles E. Tiernan, III, Lynch, Traub, Keefe & Errante, New Haven, Connecticut, of counsel), for Defendant-Appellant.

Mark G. Califano, Assistant United States Attorney, New Haven, Connecticut (Christopher F. Droney, United States Attorney for the District of Connecticut, New Haven, Connecticut, of counsel), for Appellee.

Before: KEARSE, WALKER, and HEANEY,* Circuit Judges.

HEANEY, Senior Circuit Judge:

Carlos Vasquez appeals his convictions for knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1988) and knowingly possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1988). Vasquez contends that the district court erred in denying recross-examination of a government witness and in charging the jury on the possession element of each crime charged. He also argues that there is insufficient evidence to sustain his convictions. We affirm.

## I. BACKGROUND

On November 5, 1992, four New Haven police officers were patrolling an area of the city known for criminal activity and narcotics trafficking when they observed a small group of individuals standing on the street. After one officer noticed a hand-to-hand transaction between Vasquez and another individual, the four officers approached the group. Vasquez began to walk away. One officer called out to Vasquez in both English and Spanish, and Vasquez began to run. Two officers chased him, one calling out to the two officers who stayed behind that Vasquez had dropped something. A twelve-gauge shotgun shell was retrieved from Vasquez's path. During the chase, none of the officers saw a firearm on Vasquez's person, but they noticed that he ran in an awkward manner with his arms held close to his chest.

Vasquez ultimately turned into a lot behind a building, crouched next to a parked van.

---

* The Honorable Gerald W. Heaney, United States Senior Circuit Judge for the Eighth Circuit, sitting by designation.

When the police arrived, he stood up and stated, "You got me." After his arrest, Vasquez gave the officers a false date of birth and did not give them his full name. One officer recovered a twelve-gauge shotgun from under the van next to which Vasquez had been crouching. The officer noticed that although the ground underneath the van was wet, the gun was dry. Vasquez told the officers that the gun was not his.

Vasquez was convicted by a jury of knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1988) and knowingly possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1988), and he was sentenced to prison terms of 292 months and 120 months, respectively, with the terms to run concurrently. Vasquez appeals his convictions, arguing that the district court erred in denying a recross-examination of a government witness and in failing to include a defense theory in its charge to the jury on the definition of "possession." He also challenges the sufficiency of the evidence for his convictions.

## II. DISCUSSION

### A. Denial of Recross-examination

Vasquez contends that the district court violated his Sixth Amendment confrontation right when it did not permit him to recross-examine a witness who he alleges raised a new matter on redirect examination. Specifically, he complains that Officer Vernon Barham, one of the arresting officers, testified for the first time on redirect examination that he could not see Vasquez's hands during the chase. Vasquez requested permission to recross-examine, which the district court denied, stating, "I think we've had a fair examination and cross-examination." Trial Tr. at 58. Vasquez objected to the court's ruling, but did not indicate to the court exactly what aspect of the ruling he wanted to challenge. Later in the trial the government expressed concern about the recross-examination of Officer Barham. The government acknowledged that the redirect examination of Barham was significant because Barham had misunderstood "a couple of questions and on redirect he [understood] them properly." Trial Tr. at 117. Again, the parties did not

specify what part of the officer's redirect testimony concerned them. In response to their objections, however, the court indicated that it customarily limited examination of witnesses to direct and cross-examination, stating: "It's sort of a blanket preclusion, unless I get a sense that something has happened that you really need perhaps some further inquiry." Trial Tr. at 117.

We review the trial court's restriction of cross-examination for an abuse of discretion, recognizing that the court may impose reasonable limits on examination of witnesses based on concerns such as repetition and relevance. *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). Even when we find that a court has improperly limited cross-examination, we should not reverse if we conclude that the error was harmless, or " 'unimportant in relation to everything else the jury considered on the issue in question.' " *Id.* (quoting *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991)).

With respect to the denial of recross-examination of Officer Barham, we find that the district court erred. On redirect examination, Barham testified that he never saw Vasquez's hands during the chase—a statement that he had not specifically made during his direct examination. The government considered this fact important circumstantial evidence that Vasquez was carrying the gun while he was running. In its closing argument, the government reminded the jury of Barham's testimony on this point. The court should have permitted the defendant to pursue the issue on recross-examination.

The court's error was harmless, however. Barham's testimony did not surprise the defendant; the government's theory throughout the trial, and of which defendant was well aware, was that Vasquez carried the gun during the chase. Vasquez was able to challenge this theory during Barham's cross-examination. In fact, one of the questions on cross-examination reveals that Vasquez was already aware of Barham's contention that he did not see Vasquez's hands; Vasquez's attorney asked Barham: "Would you agree

that Mr. Vasquez may have been attempting to drop that item and that's why you couldn't see his hands?" Trial Tr. at 45. Moreover, Barham's redirect examination merely elaborated on what he had earlier implied. On direct examination, Officer Barham testified that Vasquez ran in an awkward manner with his arms close together. Trial Tr. at 22. On cross, he testified that the defendant's back was toward him and that another officer was between them. Trial Tr. at 44–45.

Moreover, although important, Barham's testimony was not the only evidence in support of Vasquez's possession of the gun. Sufficient circumstantial evidence, including the testimony of at least two other witnesses that they could not see Vasquez's hands during the chase, supported Vasquez's convictions even without Barham's testimony. Accordingly, after careful review of the record, we find that the court's error was unimportant in relation to the body of evidence the jury considered on this issue.

## B. Charge to the Jury

Vasquez also objects to the district court's failure to incorporate his defense theory in its instructions to the jury as to what constitutes "knowing possession" of a firearm. Vasquez requested the court to instruct the jury that the mere presence of the defendant in the vicinity of the gun or the gun's accessibility to the defendant is not enough to prove knowing possession. His defense was that the recovered firearm was not his and that he simply had the misfortune of being apprehended in an area of high crime, near a van underneath which someone had hidden a gun.

Although the court did not give the proposed "mere presence" instruction in connection with both charges, it gave the following definitions of actual and constructive possession:

> To possess means to have something within your control. This does not necessarily mean that you must hold it physically, that is actually have possession of it. As long as the firearm is within your control, you possess it. If you find that the defendant at some time on November 5th, 1992, had actual possession or had the power and intention to control the firearm, you many

find the Government has proven the element of possession.

> Now proof of ownership of a firearm is not required, nor is the Government required to prove that at the time of the receipt or transfer the defendant knew that he was breaking the law. It is sufficient if you find that the defendant possessed, received or transported the firearm voluntarily and not by accident or mistake. You also must find that the defendant knew he was possessing a firearm.

Trial Tr. at 202, 204–05 (instruction repeated for Count 2). Following the instructions on the possession of an unregistered firearm charge, the court added:

> [T]he person who's knowingly in possession, his possession occurs voluntarily and intentionally and not because of mistake or accident. The defendant simply may not be convicted of possession of a firearm if he did not intend to possess it.

Trial Tr. at 205.

A criminal defendant is entitled to a jury charge that reflects his defense. *United States v. Pedroza*, 750 F.2d 187, 205 (2d Cir.1984), *cert. denied*, 479 U.S. 842, 107 S.Ct. 151, 93 L.Ed.2d 92 (1986). A conviction will not be overturned for refusal to give a requested charge, however, unless that instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge. *United States v. Perez*, 897 F.2d 751, 754 (5th Cir.), *cert. denied*, 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). The "mere presence" instruction Vasquez requested constitutes a valid defense, *see United States v. Viserto*, 596 F.2d 531, 539 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979), and there was some evidence in the record to support the theory. Yet the instructions given by the court clearly required the jury to find that the defendant had the intent to exercise dominion or control over the firearm and that possession could not be established by accident or mistake. As the Fifth Circuit has held, the court's constructive possession instruction effectively precluded conviction for mere pres-

ence or proximity. *See United States v. McKnight,* 953 F.2d 898, 904 (5th Cir.) (citing *United States v. Rojas,* 537 F.2d 216, 220 (5th Cir.1976)), *cert. denied,* 504 U.S. 989, 112 S.Ct. 2975, 119 L.Ed.2d 594 (1992). Moreover, by emphasizing that possession could not be established by an accident or mistake, the court informed the jury that it could not convict the defendant for simple misfortune. Although it would have been preferable for the court to incorporate Vasquez's requested instruction as a more specific statement of his defense, the court's instructions adequately apprised the jury of the defense and do not warrant reversal of Vasquez's conviction.

### C. Sufficiency of the Evidence

■ Finally, Vasquez challenges the sufficiency of the evidence that he possessed the firearm. He argues that because no one actually saw him with the gun and his fingerprints were not found on it, the government could not prove firearm possession beyond a reasonable doubt. We disagree. Several officers testified that Vasquez ran in an awkward manner with his arms close together, and that when they ultimately caught up with him, he rose from a crouched position near the firearm and stated, "You got me." The officers retrieved a dry shotgun from wet ground, indicating that the gun had recently been placed there. They also retrieved a twelve-gauge shotgun shell from the area in which Vasquez had dropped something. Reviewing the facts in the light most favorable to the government, we hold that a rational trier of fact could have concluded that Vasquez possessed the firearm. *See United States v. Castillo,* 924 F.2d 1227, 1230 (2d Cir.1991), *cert. denied,* — U.S. —, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994).

### III. CONCLUSION

Based on the foregoing, we affirm the defendant's firearm convictions.